## Fox *v.* Mellon, Appellant.

Argued January 15, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*C. Richard Morton,* with him *Griffith, Morton & Buckely,* for appellant.

*Albert B. Wrigley,* with him *Kranzley, Wrigley, Yergey and Daylor,* for appellee.

OPINION BY MR. JUSTICE COHEN, April 28, 1970:

This is an appeal from the refusal of the court below to open a default judgment which was taken at 9:08 a.m. on the twenty-first day following service of the complaint.

This action arose out of an automobile accident which occurred on May 15, 1964. On August 9, 1968, over four years later, appellee commenced her suit in trespass by filing a Praecipe for a Writ of Summons which was served on August 15. Appellant turned the writ over to his insurance agent who on August 19 forwarded it to the regional claims office of appellant's liability insurance carrier.

On October 3, 1968 appellee filed a complaint which was served on appellants' wife on October 4. Appellant had never been involved in a lawsuit before and did not notice the endorsement on the complaint to plead within twenty days. After trying unsuccessfully to talk to an attorney friend, he mailed the complaint to his broker who received it on October 14. The broker immediately mailed it to the liability carrier's claims office which received it on October 15. The manager of the claims office assumed that he had most of the twenty days left in which to respond because the broker's covering letter stated that he had received the complaint on October 14 and that it had been served shortly before that time.

During the following ten days the manager was busy processing approximately 1000 claims files in his office and attending court for several pending cases. On Friday, October 25 at about 4:10 p.m. (the prothonotary's office had closed at 4:00) the claims manager had requested C. Richard Morton to enter an appearance for appellant. On Monday, October 28 when counsel attempted to enter an appearance, he discovered that appellee had taken a default judgment at 9:08 a.m. on October 25, the twenty-first day after service.

On November 4 appellant filed a petition to open the judgment which the lower court denied because it felt appellant had not established sufficient equitable consideration.

Our cases are clear that a petition to open a judgment is an appeal to the court's discretion, *Richmond v. A. F. of L. Medical Service Plan of Philadelphia,* 415 Pa. 561, 204 A. 2d 271 (1964) ; *Murphy v. Smith,* 415 Pa. 512, 204 A. 2d 275 (1964) ; *Scott v. McEwing,* 337 Pa. 273, 10 A. 2d 436 (1940), and that discretion may be exercised to order a judgment to be opened when three factors are present: (1) the petition to open is promptly filed, (2) a defense is shown to exist on the

merits, and (3) the default is reasonably explained or excused. *Thorn v. Clearfield Borough,* 420 Pa. 584, 218 A. 2d 298 (1966); *Colucci v. Imperial,* 414 Pa. 289, 200 A. 2d 297 (1964); *Wheel v. Park Building,* 412 Pa. 545, 195 A. 2d 359 (1963).

There is no question that the petition to open was filed promptly and that a meritorious defense to the personal injury claim has been shown by means of the statute of limitations. The court below felt appellant had not shown a reasonable explanation or excuse for the delay and thus insufficient equitable considerations were present to justify opening the judgment. The record shows that the complaint was served on appellant's wife and not on his counsel, that his education ended with the ninth grade, and that the notice to plead was in very small letters. A person untrained in the law would not be looking for any such notice, and when it was in such small lettering it was unlikely to catch his attention. Taking judgment so early on the twenty-first day together with the small notice to plead gives the impression that all this was a studied attempt by appellee to obtain a default judgment. Under all the circumstances, we feel appellant did show a reasonable explanation and excuse for the delay and that the court below abused its discretion in refusing to open the judgment.

Order reversed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The court below found that "no reasonable explanation or excuse for delay in entering an appearance or filing an answer is established," and accordingly held, in the exercise of its discretion, that it would not be warranted in opening the default judgment the plaintiff had taken in this case. From my review of the

record I cannot conclude that this holding was an abuse of discretion, and hence I dissent.

The docket entries show the following:

On August 9, 1968, a praecipe for summons was filed and a writ issued; it was served on August 15, 1968.

On October 3, 1968, a complaint was filed, and duly served by registered mail the following day, October 4.

On October 25, 1968, judgment by default was entered in favor of plaintiff for want of an appearance or an answer by defendant.[1]

On November 4, 1968, petition to open the judgment was filed by defendant, and rule granted on plaintiff to show cause "why judgment should not be stricken."

The further facts of the case were developed by deposition pursuant to the rule to show cause. They show that upon being served with the writ, "defendant promptly turned [it] over to his insurance agent who, on August 19, 1968, forwarded it to the Regional Claims Office of the defendant's liability insurance carrier", Ohio Casualty Insurance Co. (appellant's brief). The copy of the complaint which was served by registered mail on the following October 4 was accompanied by a letter from plaintiff's attorney to defendant. It gave the full caption of the case, and said "Enclosed herewith please find a true and correct copy of the original complaint filed by me in this matter with the Prothonotary of the Court of Common Pleas of Chester County." The defendant delayed sending the complaint to his insurance agent because "I thought the case was over and done with. I wanted to talk to somebody about it that

---

[1] After judgment by default there must still be a trial on the issue of damages, since plaintiff was not entitled to a sum certain as to the personal injuries sustained. Pa. R.C.P. 1047(a).

could enlighten me, so to speak." He tried without success to reach an attorney friend of his. He wanted to talk to his insurance agent, Mr. Yoos, to whom he had earlier forwarded the summons, because "I was concerned." When asked why he didn't telephone Mr. Yoos, the answer was, "Truthfully can't say." Defendant did, however, mail the complaint to Mr. Yoos, who received it on October 14, 1968. On the same day, Mr. Yoos sent it to the Regional Claims Office of the insurance carrier with a covering letter reading (after a subject caption which identified the claimant and the insured) : "On 8-19-68 we sent you Summons in Trespass. Now att. is COMPLAINT rec. by us from insured today. Please handle as necessary."

The claims manager of the Philadelphia branch office of the insurance company, a Mr. Melson, testified that the complaint was received in his office on October 15 from Mr. Yoos, the agent. Melson made no attempt to find out when the complaint had been served, but assumed this had occurred shortly before October 14, the date of mailing to him. He first spoke to the insurance company attorney (the attorney for appellant here) about the matter on the late afternoon of October 25, 1968. When asked on direct examination why he had not referred the matter to his counsel before October 25, he answered, "Well, it was a matter of business in general. I had been attending a trial, I believe in Delaware County, and had a number of other such matters." On cross-examination he repeated the substance of this answer, saying ". . . well, there was no reason other than occupation both with the trial and with the other suits and the assumption made that it [the complaint] had been received by the insured on or closely before the fourteenth." Mr. Melson stated that he had seventeen men working under him. He identified a Donald Chabin as an adjuster in his office who had worked on this case.

As President Judge GAWTHROP in his opinion below observed, a period of two months and ten days elapsed between the service of the writ and the taking of judgment, during which time an appearance could have been entered; after the complaint was received in the Philadelphia claims department of the defendant's insurance carrier, there were still nine days within which to enter a timely appearance. And as Judge GAWTHROP notes, "Mere reference to the date of the affidavit to the complaint, made October 2, 1968, as shown on the copy served would have been cautionary as to the time available to appear and answer." As for the nine day delay of the defendant himself in forwarding the complaint to Mr. Yoos, the agent, it is noted that the writ, a much less informative document than the complaint, was promptly sent by him to the insurance company when it was served in August.

It seems to me abundantly clear from this undisputed evidence that there was in fact no valid explanation or excuse for delay presented either by the defendant or the insurance company on his behalf, and that the court below was correct in so holding and therefore in refusing to exercise its equitable discretion to open the judgment. *Murphy v. Smith,* 415 Pa. 512, 204 A. 2d 275 (1964), *Colacioppo v. Holcombe,* 166 Pa. Superior Ct. 186, 70 A. 2d 452 (1950).

The majority opinion, in overruling the lower court, seems to do so more on the basis of its "impression" of plaintiff's conduct than because of any equity in defendant's lame excuses. Thus it states, in the first place, that "the complaint was served on appellant's wife and not on his counsel." What the record shows is that the *writ of summons,* not the complaint, was served on defendant's wife on August 15. Service on an adult member of the family of a defendant is certainly good service. Pa. R.C.P. 1009. The *complaint* was sent to his home by registered mail (it does not

have to be registered) as permitted by Pa. R.C.P. 1027(2) and received there October 4. More importantly, no counsel ever appeared for defendant, and so obviously could not be served.

In the second place, the majority opinion suggests that the taking of judgment so early on the 21st day (9:08 a.m. on October 25) coupled with a small-type notice to plead on the cover of the complaint "was a studied attempt by appellee to obtain a default judgment." This seems to cast aspersion on the plaintiff and her counsel which I consider to be wholly unwarranted. Canon 15 of the Canons of Professional Ethics, which in 1968 were in force in this Commonwealth (Pa. R.C.P. 205), provides in part: "The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client."[2]

---

[2] As of August 12, 1969, the American Bar Association replaced the "Canons" by adopting the Code of Professional Responsibility effective January 1, 1970. The canons of the Code are similarly embodied in our rules by virtue of Rule 205. Canon 7 of the new Code is "A lawyer should represent a client zealously within the bounds of the law." See EC 7-1, EC 7-19, DR 7-101, and DR 7-102

No one is happy with "snap" judgments, probably including the lawyer who takes one. "Lawyers are accused of taking advantage of 'loopholes' and 'technicalities' to win. Persons who make this charge are unaware, or do not understand, that the lawyer is hired to win, and if he does not exercise every legitimate effort in his client's behalf, then he is betraying a sacred trust." Rochelle and Payne, "The Struggle for Public Understanding," 25 *Texas B. J.* 109, 159 (1962). Had there been counsel for defendant in the picture here, even informally, the case would be entirely different. Canon 25 would—or should—have prevented the action here taken without notice to opposing counsel. Indeed, one of the great satisfactions in the practice of the legal profession is the reciprocal good faith, mutual respect and courtesy that normally exist between and among lawyers in the conduct of litigation, as well as in their other dealings with each other. One of the fruits of this standard of conduct is that the taking of judgment without notice to opposing counsel is, happily, a rarity. The case before us, however, had been pending for over two months, and no attorney for defendant had appeared. The complaint had been duly served a full 20 days, and no attorney for defendant had appeared. How long beyond that time should one be required to wait?

Appellant's brief suggests that plaintiff's four year delay in initiating the action is an equity in favor of defendant. The statute of limitations is, to be sure, a meritorious defense, and the defense that will be pleaded here, but this is not to say that the plaintiff should not have brought a suit to which the statute could be pleaded. The defense of the statute is an affirmative defense and may be waived. Pa. R. C. P. 1030, 1032.

as stating relevant ethical considerations and disciplinary rules under this canon.

"[I]t is quite possible that if suit were instituted, the defendant for some reason might wish not to take advantage of the defense of limitations available to him, and if the client wishes to put this to the test, then there is no ethical reason why his lawyer should not do so on his behalf." American Bar Ass'n., Standing Committee on Professional Ethics, Informal Opinion No. 694 (1963).

Finally, as to the small print, it may be that the Court should in Pa. R.C.P. 1026 stipulate a minimum size of lettering, and perhaps a certain color of print, on notices to plead, but there is no rule on this subject as yet. In the meantime, to conclude that small type is part of a "studied attempt" to obtain a default judgment strikes me as unwarranted.

For the foregoing reasons, I dissent.

Mr. Justice ROBERTS joins in this dissent.