Opinion by
Spaulding, J.,
This is an appeal from an order of the Court of Common Pleas of Montgomery County dismissing appellant corporation’s petition to open a judgment of *120 $119,134.51 confessed against appellant on August 21, 1970.[1]
In 1968, appellant (Pepper), a multi-million dollar business, the largest broker of radio and television advertising and programming time in the United States, sought to diversify by purchasing a line of men’s toiletries produced by appellee (I.E.C.). After negotiations between top corporate officers and counsel, an agreement of sale was executed on July 29, 1968. President Judge Groshens of the court below ably summarizes the significant terms of the agreement as follows:
“1. Sale of Inventory. In essence, I.E.C. agreed to sell to Pepper its inventory of merchandise, packaging, and promotional materials.
“2. Sale of Trademarks. I.E.C. agreed to sell to Pepper ‘all right, title, and interest’ of I.E.C. in certain trademarks. The United States Trademark registrations enumerated were ‘Mark II,’ ‘Inferno,’ and ‘Rogue’. In addition the agreement refers to the trademark ‘British Rogue’, for which no application for registration had been filed, and the trademark ‘400 XL’ on which an application was pending.
“3. Quality of the Purchase. With respect to the quality of the inventory sold, Paragraph 10 of the agreement provides as follows: ‘Promptly after the execution of this agreement representatives of the parties shall make a physical count of the inventory of merchandise, packaging and promotional material to be sold hereunder and shall determine the cost thereof as provided in paragraph 2b. The inventory for this purpose shall include all the items of the nature set forth *121 iii Exhibit “A” and no allowances shall be made for items claimed to be unusable or unsaleable:’.
“'4. Installment Payments. The agreement provided for the payment to I.E.C. of a sum to be computed on the basis of the cost to I.E.C. of the inventory. Pepper agreed to pay $10,000.00 of the purchase price upon signing the agreement and the balance in four installments due on December 31, 1968; June 30, 1969; June 30,1970; and June 30,1971. The unpaid balance of the purchase price was to be evidenced by a promissory note delivered at closing.” (E. 590a-591a.)
The closing under this agreement took place on August 12,1968; I.E.C. delivered a bill of sale and assignment transferring its inventory and the trademarks to Pepper. At closing, Pepper delivered to I.E.C. a judgment note for the balance of the purchase price. The note provided for payment in four installments, the first due December 31, 1968, and the other three due annually thereafter on or before June 30. The instrument also provided, in the event of default, for acceleration of the installments, payment of reasonable legal fees, and confession of judgment by attorney under the cognovit system in “Pennsylvania or elsewhere”.
Pepper paid the first two installments on the judgment note when they were due. However, they were by no means content with the line of men’s toiletries purchased from I.E.C., having experienced marketing difficulties, trademark problems, and some product deterioration. In an attempt to recoup part of its losses from the venture, Pepper sold the bulk of its inventory of “Mark II” cosmetics to Flex Electric Products, Inc. (Flex). In partial payment, Flex agreed to pay the remaining balance due on the judgment note. However, Flex soon experienced its own problems with the cosmetics; primarily, the product was deteriorating on the shelf.
*122 When the third payment on the note came due on June 30, 1970, Pepper, without any advance warning to I.E.C., did not pay it, having assumed that Flex would make the payment. Flex did not do so. When LE.C.’s collection agent[2] requested payment from Pepper, Pepper sent a formal notice, pursuant to the Tennessee Uniform Commercial Code, informing I.E.C. of the bulk transfer of the cosmetics inventory to Flex. Subsequently, Pepper notified the collection agent that Flex should be contacted for the payment due.
I.E.C.’s counsel formally demanded payment of the overdue installment on July 1, 1970, advising Pepper that unless payment was made within 15 days the remaining (fourth) installment would accelerate and become immediately due. On July 31,1970, Pepper wrote to I.E.C. enclosing its check for $25,582.96 of the $64,-039.61 due on the third installment, having applied that amount of receivables it then owed to Flex. I.E.C. acknowledged the partial payment on August 10, 1970, but refused to further extend the time for payment of the installment. Pepper contends that I.E.C. and Flex then agreed that I.E.C. would not accelerate the note, provided that Flex made a payment of $10,000.00 on the balance due, by August 17. The parties agree that Flex made no payments at any time. On August 26, 1970, I.E.C. took judgment on the note. The court below dismissed Pepper’s petition to open judgment and the present appeal followed.[3]
*123 Appellant Pepper initially argues that the Pennsylvania statutes permitting judgments by confession are unconstitutional in their entirety. Pepper also contends that it has shown a meritorious defense on which the judgment should have been opened.
I
The most recent decisions of the United States Supreme Court in Swarb v. Lennox, 405 U.S. 191, 91 S. Ct. 2243 (1972), and the companion case of D. H. Overmyer Co., Ino. of Ohio v. Frick Co., 405 U.S. 174, 91 S. Ct. 1220 (1972), are controlling here. In Swarb, the Court specifically recognized that: “The cognovit system is firmly entrenched in Pennsylvania and has long been in effect. . . .” 405 U.S. at 193. After reviewing the mechanics of our statutory scheme[4] and the facts in the particular action, the Court summarized, in part, the holding of the three-judge United States District Court for the Eastern District of Pennsylvania which had heard the case below, 314 P. Supp. 1091 (E.D. Pa. 1970), as follows:
“1. The Pennsylvania system leading to confessed judgment and execution does comply with due process standards provided There has been an understanding and voluntary consent of the debtor in signing the document.’ 314 P. Supp., at 1095.
“2. If, however, there is no such understanding consent, the procedure violates due process requirements of notice and an opportunity to be heard. Ibid.
“4. The record did not establish that the action could be maintained as a class action on behalf of individual natural persons with annual income of more than |10,000. Id., 1098-1099.
“5. It could be maintained, however, as a class action on behalf of natural persons residing in Pennsyl *124 vania who earn less than $10,000 annually and who signed consumer financing or lease contracts containing cognovit provisions. Id., 1099.
“The court then declared the Pennsylvania practice of confessing judgments to be unconstitutional, . . . ., as applied to the class designated, and enjoined the entry of any confessed judgment against a member of the class in the absence of a showing of the required waiver. Id., 1103. The judge dissenting did so as to the limitation of relief to those earring less than $10,-000 annually. Id., 1102.” 405 U.S. at 198-200.
Mr. Justice Blackmun delivered this opinion of the Court in Swarb affirming the decision of the District Court. He states that the “claim is that the District Court erred in confining the relief it granted . . . and that the court should have declared the Pennsylvania rules and statutes unconstitutional on their face. A holding of facial unconstitutionality, of course, wholly apart from any class consideration, would afford relief to every Pennsylvania cognovit obligor. Today’s decision in Overmyer, although it concerns a corporate and not an individual debtor, is adverse to this contention of the plaintiff-appellants. In Overmyer it is recognized, . . ., that, under appropriate circumstances, a cognovit debtor may be held effectively and legally to have waived those rights he would possess if the document he signed had contained no cognovit provisions.” 405 U.S. at 200-01.
The instant case is clearly controlled by the Supreme Court’s decisions in Swarb and Overmyer, being almost identical factually to the latter. As there, the cognovit clause here was entered into by a corporation with widespread operations as part of a contract bargained for between two corporate businesses. This was not a contract of adhesion. Further, Pepper, a huge *125 business, cannot seriously contend that its officers and counsel were not aware of the significance of the judgment note and cognovit provision. While Pepper may not have been able to foresee if, or when I.E.C. would confess judgment, this inability does not of itself militate against effective waiver of its rights under the cognovit clause. Overmyer, 405 U.S. at 186. See Brady v. United States, 397 U.S. 742, 757 (1970); McMann v. Richardson, 397 U.S. 759, 772-773 (1970). As the Court concluded in Overmyer: “[A] cognovit clause is not, per se, violative of Fourteenth Amendment due process .... [A] cognovit provision may well serve a proper and useful purpose in the commercial world and at the same time not be vulnerable to constitutional attack.” 405 U.S. at 187. Without reaching the question of whether our cognovit statutes are constitutional as to individuals not in the class delineated by the District Court in Swarb, supra, we hold that under the facts of this case the statutes are constitutionally valid as to businesses clearly without the class.
II
A petition to open a default judgment is an appeal to the court’s discretion, Fox v. Mellon, 438 Pa. 364, 366, 264 A. 2d 623 (1970); McDonald v. Allen, 416 Pa. 397, 206 A. 2d 395 (1965), and before that discretion will be exercised three factors must be present: (1) the petition to open is promptly filed, (2) the default is reasonably explained, and (3) a defense is shown to exist on the merits. Fox v. Mellon, supra; Wheel v. Park Building, 412 Pa. 545, 195 A. 2d 359 (1963). Pepper contends that it has shown a meritorious defense based on alleged fraudulent misrepresentations, breach of implied warranties, or other breaches of contract, by I.E.C. The court below concluded that “the *126 claims are without merit” and having so determined after a thorough review that no defense was shown to exist on the merits, dismissed Pepper’s petition to open the judgment. “Appellate review of lower court decisions in this area lies only where the lower court has abused its discretion.” Girard Trust Bank v. Remick, 215 Pa. Superior Ct. 375, 258 A. 2d 882 (1969); Thomasik v. Thomasik, 413 Pa. 559, 198 A. 2d 511 (1964). The record in the instant case discloses no abuse of discretion and the order of the lower court should not be disturbed.
The order of the lower court is affirmed.

 Entered pursuant to Pa. R. C. P. 2950 et seg. (1971), which provide in part, that a confession of judgment for money “may be entered by the prothonotary . . . without the agency of an attorney and without the filing of a complaint, declaration or confession, for the amount which may appear to be due from the face of the instrument.” (Rule 2951(a)).

 Philadelphia National Bank.

 On November 23, 1970, six days after it had filed its petition to open judgment and secured a stay of all proceedings, Pepper petitioned to remove this case to the United States District Court for the Eastern District of Pennsylvania. I.E.C. then filed a motion to remand. On February 8, 1971, Judge E. Mac Tkotjtman of the District Court ruled that the removal was untimely and remanded the case back to the court below. 323 F. Supp. 1107 (E.D. Pa. 1971).

 Pa. R. C. P. 2950 et seq. (1971).