## Federal Deposit Insurance Corporation v. First American Equity Corporation

*John F. Dougherty*, for petitioners.
*Anthony E. Creato*, for respondent.

GREENBERG, *J.*, January 17, 1979—This matter is before us on defendants' petition to open, strike or vacate a judgment by confession entered on October 6, 1977.

On July 1, 1972, Centennial Bank of Philadelphia, Pa. (Centennial) issued an eight percent subordinated capital note (capital note) in favor of Joseph M. McCawley (McCawley) in the principal amount of $500,000 to mature on December 31, 1979. On August 28, 1974, First American Equity Corporation (First American) obtained a loan (loan) from Centennial and executed a promissory note payable on demand in the amount of $186,000. That same day, McCawley executed a suretyship agreement in which he agreed to pay First American's loan from Centennial in the event that First American failed to repay the loan on demand.

On October 20, 1976, Pennsylvania Department of Banking took possession of all assets and property of Centennial pursuant to a declaration of insolvency. Subsequently, the Federal Deposit Insurance Corporation (FDIC) purchased certain assets, including the loan made to First American and the McCawley suretyship agreement.

Upon refusal of petitioners, First American and McCawley, to pay all amounts due and owing under the loan and suretyship agreement, respondent, FDIC, confessed judgment against petitioners on October 6, 1977.

Petitioners then filed this petition to open, strike, or vacate the judgment by confession.

It is well established that a petition to open judgment is an appeal to the court's discretion: Fox v. Mellon, 438 Pa. 364, 264 A. 2d 623 (1970); Richmond v. A.F. of L. Medical Service Plan of Philadelphia, 415 Pa. 561, 204 A. 2d 271 (1964); Murphy v. Smith, 415 Pa. 512, 204 A. 2d 275 (1964). However, before a lower court may exercise its discretion to open judgment, petitioner must establish (1) that the petition was promptly filed, (2) that a legitimate explanation exists for the default, and (3) that there is a meritorious defense to the claim: Zinck v. Smashy's Auto Salvage, Inc., 250 Pa. Superior Ct. 553, 378 A. 2d 1287 (1977).

In the case at bar, we need not discuss the first two requirements set forth above, because we believe that as a matter of law, no meritorious defense exists.

Petitioners argue that pursuant to section 3-606(1)(b) of the Pennsylvania Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12 A P.S. §3-606, a total discharge was effected with respect to the loan and suretyship obligations prior to the FDIC's acquisition of Centennial's assets. That section provides in pertinent part: "(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Specifically, petitioners' contentions can be summarized as follows: (1) that Centennial agreed with petitioners to treat the capital note, issued to McCawley, as collateral for the loan and the suretyship agreement as witnessed by (a) Centennial's application of amounts due and owing to McCawley

as interest under the capital note against amounts due Centennial for the interest and principal on the First American loan and the McCawley suretyship agreement, and (b) the affidavit of the assistant vice-president of Centennial expressing the aforesaid's belief that Centennial treated the capital note as collateral from which it satisfied amounts due it from First American and McCawley, (2) that Centennial's failure and subsequent liquidation was caused by its own mismanagement, (3) that as a result of Centennial's failure the capital note became "impaired" collateral within the meaning of 12A P.S. §3-606(1)(b), and (4) that the loan and surety obligations were consequently discharged pursuant to 12A P.S. §3-606(1)(b) prior to the FDIC's purchase of Centennial's assets.

Respondents argue that the Act of September 21, 1950, 64 Stat. 888, 12A U.S.C.A. §1823(e), acts to invalidate any alleged agreement entered into between Centennial and petitioners which would have effected collateralization of the capital note. That section provides:

"No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said

board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

Thus, respondents contend that the alleged agreement effecting collateralization of the capital note is invalid due to noncompliance with the statute set forth above and that petitioners are therefore precluded, as a matter of law, from asserting the defense provided for by section 3-606(1)(b) of the Pennsylvania Uniform Commercial Code.

Petitioners, on the other hand, assert that section 1823(e) is not applicable to the case at bar unless a jury determines that a "secret agreement" existed between Centennial and petitioners. Petitioners argue further that respondent was, in fact, aware, or should have been aware, that the capital note was treated as collateral by Centennial, so that no "secret agreement" was possible.

We find no merit in petitioners' position. Under the instant facts it is undisputed that, assuming that the agreement was made, it was not reduced to writing in accordance with the statutory requirements set forth in section 1823(e) of 12A U.S.C.A. Thus that section invalidates such an agreement and precludes the assertion of petitioners' defense based on such an alleged agreement.

Petitioners' construction of the statute as prohibiting only "secret agreements" is in error. The mandate of section 1823(e) of 12A U.S.C.A. is clear. This section enables the FDIC, when it has purchased assets in its corporate capacity, to disregard any agreement not reduced to writing, which would diminish or defeat its interest in any asset so purchased: Dasco, Inc. v. American City Bank & Trust Co., 429 F.Supp. 767 (D. Nev. 1977). An agreement is deemed "secret" and therefore invalid if it di-

minishes the FDIC's interest in any purchased asset and if it fails to meet the requirements of section 1823(e). To judicially create an exception based upon alleged awareness on the part of the FDIC that its predecessor in interest allegedly treated the capital note as collateral for the loan and surety obligations is simply to ignore the clear language of the statute.

We hold that petitioners are precluded, as a matter of law, from asserting the defense based upon section 3-606(1)(b) of the Pennsylvania Uniform Commercial Code due to the operation of 12A U.S.C.A. §1823(e). Therefore, the petition to open, strike or vacate the judgment by confession is without merit and must be denied.

## ORDER

And now, January 17, 1979, defendants' petition to open, strike or vacate the judgment is denied in accordance with the accompanying memorandum opinion.