

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2005

# Natl Grange Mutl Ins v. Goldstein

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Natl Grange Mutl Ins v. Goldstein" (2005). *2005 Decisions.* Paper 754.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/754

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-3186

_____

NATIONAL GRANGE MUTUAL INSURANCE COMPANY,

Appellant,

v.

GOLDSTEIN, HESLOP, STEEL, CLAPPER, OSWALT & STOEHR;
JOHN HESLOP, Esq.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 02-cv-01031)
District Judge: The Honorable James F. McClure, Jr.

_____

Argued July 14, 2005

BEFORE: ALITO, VAN ANTWERPEN and ALDISERT, Circuit Judges

(Filed August 2, 2005)

Steven E. Angstreich (Argued)
Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.
1616 Walnut Street, 5th Floor
Philadelphia, PA 19103

*Attorney for Appellant*

Jeffrey B. McCarron (Argued)
Kathleen M. Carson
Swartz Campbell LLC

1601 Market Street, 34th Floor
Philadelphia, PA 19103

*Attorneys for Appellees*

---

OPINION

---

VAN ANTWERPEN, Circuit Judge

Appellant National Grange Mutual Insurance Co. ("National Grange") challenges the July 8, 2004, order of the District Court granting summary judgment in favor of Appellees John Heslop, Esq. ("Heslop") and the law firm of Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr ("the Firm"). In this diversity case, the District Court held that National Grange's legal malpractice action could not lie under Pennsylvania law because the plaintiff could not establish actual loss due to the appellees' actions or inaction. For the reasons set forth below, we will affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This legal malpractice action arose from Heslop's representation of National Grange in a breach of contract and bad faith action brought by Ralph Martin Coyler in the Court of Common Pleas of Centre County, Pennsylvania ("Coyler v. Nat'l Grange"). The events leading up to the Coyler v. Nat'l Grange litigation began on October 2, 1996, when Coyler filed a products liability and breach of contract action against Ebac Systems, Inc. ("Coyler v. Ebac"). Ebac had a commercial general liability policy with National Grange and requested that National Grange provide legal representation in the Coyler v. Ebac

2

litigation in accordance with that policy.

Tracy Robinson, the National Grange employee assigned to handle Ebac's request, denied coverage to Ebac, and it appears that she did so without first following company policy of obtaining a formal coverage opinion from an attorney. Because of this, Ebac hired its own attorney to handle the Coyler v. Ebac matter. Coyler and Ebac entered into a settlement agreement shortly before trial, whereby Ebac paid Coyler $130,000.00 and assigned its rights under the National Grange insurance policy to Coyler.

On March 8, 2000, Coyler, as Ebac's assignee, filed his action against National Grange alleging breach of contract and violation of the Pennsylvania bad faith statute based on National Grange's failure to defend or indemnify Ebac. Coyler served a copy of the complaint on National Grange's corporate counsel in New Hampshire. The National Grange legal department received the complaint at some time in March 2000, and forwarded it to Tracy Robinson in National Grange's Richmond office on March 20, 2000. National Grange entrusted Robinson to handle the Coyler v. Nat'l Grange litigation on behalf of the company.

Robinson took no action in response to the complaint, and Coyler served a notice of intent to take default on National Grange on April 6, 2000. Nor did any one else at National Grange take any action, and Coyler filed a praecipe for entry of default judgment in the Court of Common Pleas on April 27, 2000. On May 2, 2000, Willam McKenna, the head of National Grange's legal department, called Robinson regarding the praecipe

3

to enter default judgment, and Robinson represented that she was handling the matter. Again, however, Robinson took no action, and a default judgment was entered against National Grange on May 1, 2000.

National Grange received a notice of the entry of default sometime in May 2000. On June 5, 2000, Coyler filed a praecipe to schedule an assessment of damages hearing in the Court of Common Pleas. The hearing was scheduled for August 14, 2000, and Coyler served a notice to attend the hearing on David Royer, National Grange's Treasurer. As of July 5, 2000, when Coyler served the notice to attend, no one at National Grange had yet taken any action in response to Coyler's suit against the company.[1] Finally, on July 19, 2000, Appellee Heslop and his Firm were retained to represent National Grange in the damages proceedings.

Heslop asserts that he initially considered the possibility of filing a petition to open the default judgment. However, he ultimately advised National Grange that such a petition "would not have been advantageous" and recommended going forward only with the presentation of a defense at the damages stage. Brief for Appellant at 6-7.[2] On November 15, 2000, the Court of Common Pleas entered its decision on damages. The

---

[1] Although Robinson was the employee responsible for handling the <u>Coyler v. Nat'l Grange</u> matter, Coyler served all of the relevant papers on National Grange's headquarters in New Hampshire in addition to providing personal copies to Robinson in Richmond.

[2] National Grange claims that Heslop made this recommendation without first reviewing all of the relevant case materials, such as Ebac's insurance policy with National Grange.

court awarded $130,000.00 in compensatory damages, $3,350,000.00 in punitive damages, $62,245.00 in attorney's fees, and compounded interest in the amount of $142.763.00.

National Grange then retained new counsel to handle post-trial litigation. Through discussions with its new attorney, National Grange came to believe that Heslop was negligent in failing to file a petition to open the default judgment and in failing to argue that damages should be assessed under Virginia law.[3] National Grange raised its choice of law argument in a motion for post-trial relief in the Court of Common Pleas, which was denied on May 4, 2001. The Superior Court of Pennsylvania affirmed on April 24, 2002, finding that National Grange waived its ability to invoke Virginia law on damages when it allowed the default judgment to be entered pursuant to Pennsylvania law. The state proceedings were eventually terminated when Coyler and National Grange entered into a settlement agreement, whereby National Grange paid Coyler $2,500,000.00.

On June 14, 2002, National Grange commenced this diversity action against Heslop and the Firm in the United States District Court for the Middle District of Pennsylvania. Applying Pennsylvania's legal malpractice standards, the District Court concluded that National Grange was unable to show actual loss due to the appellees' inactions and entered summary judgment in favor of Appellees on July 8, 2004.

## II. JURISDICTION AND STANDARD OF REVIEW

---

[3] This alleged failure is significant because Virginia law places a cap on punitive damages in a bad faith action at $350,000.00.

The District Court properly exercised jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00. This Court has jurisdiction over the timely appeal of the District Court's July 8, 2004, final order pursuant to 28 U.S.C. § 1291.

This Court's review of a lower court grant of summary judgment is *de novo*, and we apply the same standard that the District Court should have applied. Union Pacific R.R. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002). Under Fed. R. Civ. P. 56(c), summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The material facts of this case are not in dispute. Our review is thus limited to the purely legal question of whether National Grange failed as a matter of law to make out a cause of action for legal malpractice.

III. DISCUSSION

As a federal court sitting in diversity, we apply Pennsylvania substantive law to National Grange's legal malpractice claims. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 871 (2d Cir. 1994). To succeed on a legal malpractice action under Pennsylvania law, a plaintiff must establish the following elements: "1) employment of the attorney or other basis for duty; 2) the

failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff." Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998) (quoting Rizzo v. Haines, 555 A.2d 58, 65 (Pa. 1989)).

"An essential element to this cause of action is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm or the threat of future harm." Kituskie, 714 A.2d at 1030. Therefore, aside from showing that the defendants' representation was deficient, "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case." Id. In other words, "a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action," id., before reaching the attorney's alleged failure to exercise ordinary skill and knowledge. "It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent. . . ." Id.

In this case, National Grange claims that Heslop's representation at the assessment of damages stage of the Coyler v. Nat'l Grange matter was negligent in two respects: (1) he failed to file a petition to open the default judgment, and (2) he failed to argue that damages should be capped pursuant to Virginia law. Thus, in order for National Grange's malpractice claim to succeed, it must first establish as a threshold matter that a petition to

7

open or a choice of law argument would have been successful if made. See id. The District Court granted summary judgment based on the determination that neither action would have been successful under Pennsylvania law and therefore declined to reach the issue of whether Heslop exercised ordinary skill and knowledge.

A.     *Petition to Open*

In order to succeed on a petition to open a default judgment under Pennsylvania law, "(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." McCoy v. Pub. Acceptance Corp., 305 A.2d 698, 700 (Pa. 1973); see also Balk v. Ford Motor Co., 285 A.2d 128, 130-31 (Pa. 1971); Seeger v. First Union Nat'l Bank, 836 A.2d 163, 165 (Pa. Super. Ct. 2003). The District Court concluded that a petition to open the default judgment in Coyler v. Nat'l Grange would have failed under the first two prongs of this standard.

Regarding promptness, the length of delay in filing a petition to open is measured from the date the defendant receives the entry of default judgment. Ruczynski v. Jesray Constr. Corp., 326 A.2d 326, 328 (Pa. 1974). In this case, National Grange received notice of the entry of default early in May 2000. Even if Heslop had filed a petition to open on the day he was retained (July 19, 2000), filing would have been delayed approximately two and one-half months. As the District Court noted, we cannot say that a two and one-half-month delay is untimely as a matter of Pennsylvania law. Compare

8

McCoy, 305 A.2d at 699-700 (filing after two and one-half weeks not prompt); Allegheny Hydro No. 1 v. A. Line Bldrs., 722 A.2d 189, 194 (Pa. Super. Ct. 1998) (filing after 41 days not prompt); with Liberty Nat'l Bank & Trust Co. v. Yackovich, 99 F.R.D. 518, 520 (W.D. Pa. 1982) (filing after almost six months' delay still prompt); Queen City Elec. Supply Co. v. Soltis Elec. Co., 421 A.2d 174, 175 (Pa. 1980) (filing after 21-month delay prompt under the circumstances). That said, the District Court concluded that the delay would have rendered a petition untimely under the circumstances in this case because National Grange could not provide a reasonable excuse for the delay.

The District Court similarly determined that National Grange could not provide a sufficient excuse under the second prong for its failure to answer Coyler's complaint in the first place. National Grange asserts the same excuse for both its failure to answer the complaint and its delay in filing a petition to open: the company relied on the misrepresentations of its "rogue employee," Tracy Robinson, that she was handling the matter. National Grange argues that it reasonably entrusted Robinson to handle the Coyler litigation and was under a "justifiable belief" that the company's interests were being protected.

We note first that, even if Robinson's actions could justify the company's initial failure to answer Coyler's complaint, they do not account for the delay in filing a petition to open. Coyler served all relevant papers on National Grange's headquarters in New Hampshire in addition to sending separate copies to Robinson. It is undisputed that

9

National Grange's legal department received notice of the default in early May 2000. Thus, even if management had believed that Robinson was protecting the company's interests prior to the entry of default, they were on notice that Robinson had failed in her duties in May 2000. Still, National Grange delayed another two and one-half months before hiring Heslop and the Firm. Any delay that occurred after the legal department received notice of the default judgment cannot be justified by claims that National Grange reasonably believed Robinson was handling the litigation.

Aside from the promptness issue, the District Court found that National Grange's reliance on its "rogue employee" would not be sufficient justification for the company's failure to appear and answer Coyler's complaint. Under Pennsylvania case law, a petitioner may establish sufficient justification based on oversight, inadvertence, or clerical error by an employee. See, e.g., Balk, 285 A.2d at 132 (sufficient justification where defendant's insurance company negligently lost the complaint); Fox v. Mellon, 264 A.2d 623, 625 (Pa. 1970) (excusable neglect where defendant's insurance company mistakenly believed it had more time to respond and the defendant himself was not sophisticated enough to notice a problem); see also Campbell v. Heilman Homes, Inc., 335 A.2d 371, 373 (Pa. Super. Ct. 1975) ("where failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of the appellant, the default judgment may be opened.").

We agree with the District Court that Robinson's actions on behalf of National

10

Grange amounted to more than mere inadvertence or oversight. The Superior Court of Pennsylvania's decision in Campbell provides an example of excusable neglect on the part of a company based on the inattentiveness of an employee. In that case, a complaint against Heilman Homes, a seller of mobile homes, was served on the manager of one of its sales lots. The lot manager did not forward the complaint to Heilman's home offices, thereby failing to follow company procedure. In declining to "saddle" the company with a default judgment due to its employee's inadvertence, the Superior Court noted that the company's mistake was "not unlike a clerical error." Id. at 373.

Unlike the defendant in Campbell, National Grange was aware of Coyler's action against the company and specifically delegated the responsibility for handling the matter to its employee, Robinson. The District Court thus determined that Campbell is inapposite and instead relied on the Superior Court's decision in Autologic, Inc. v. Cristinzio Movers, 481 A.2d 1362 (Pa. Super. Ct. 1985). Like this case, Autologic involved the failures of an employee who was entrusted to handle claims against the defendant company. See id. at 1363. The Superior Court expressly distinguished Campbell and other cases involving mere inadvertence and clerical error:

> The fact remains that it was this type of employee that appellant chose to give responsibility to for handling damage claims. . . . Thus, appellant's failure to respond to the complaint was not due to simply the inattentiveness of its employee, but to her conscious decision which it had empowered her to make.

Id. at 1364. We agree with the District Court that National Grange's asserted justification

11

for its failure to answer Coyler's complaint is no closer to mere inadvertence than the excuse rejected by the Superior Court in Autologic.

National Grange attempts to distinguish its excuse from the one asserted by the defendant in Autologic by labeling Robinson a "rogue employee." As we understand it, the distinction that National Grange draws between this case and Autologic is that National Grange reasonably relied on Robinson, who had demonstrated reliability in the past,[4] whereas the defendant in Autologic unreasonably relied on an unqualified employee. In other words, National Grange did not make the deliberate decision not to defend but rather reasonably believed that its interests would be protected by giving the case to Robinson, who unforeseeably misled the company and failed in her duties.

This distinction is neither real nor meaningful. There was no suggestion in Autologic that the defendant's entrusted employee was generally unqualified to handle her responsibilities. Moreover, like National Grange, the defendant company in Autologic apparently intended to defend the underlying litigation but was prevented from doing so by the mistakes of its employee. See id. at 1363. Thus, insofar as National Grange was prevented from defending the Coyler matter because it delegated responsibility to an employee who chose not to perform her duties by answering the complaint, this case is directly analogous to Autologic.

_____

[4] We note that the notion that Robinson had always been a stellar employee who had an unexpected lapse in character appears to be belied by her prior failure to follow company policy with respect to the Coyler v. Ebac matter. See Section I, supra.

12

However, National Grange claims that the District Court failed in its obligation to predict how the Supreme Court of Pennsylvania would have ruled on this case by relying on state intermediate appellate court decisions. Brief for Appellant at 14 ("[B]y simply determining that Autologic controlled, the District Court failed in its function to 'predict' the law of the highest court of the jurisdiction."). National Grange argues that the Supreme Court of Pennsylvania has not addressed the specific issue of whether reliance on a "rogue employee" can constitute a sufficient excuse for failing to answer a complaint under the standards for reviewing a petition to open.

Federal courts sitting in diversity "are to apply state law as interpreted by the state's highest court. *In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance* in determining how the highest court would rule." McKenna v. Pacific Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994) (citations omitted) (emphasis added). In this case, the District Court applied well-settled law from the highest court in Pennsylvania regarding what factors must be considered in reviewing a petition to open a default judgment. Although the state's highest court has not decided a case with the precise factual background presented here, the District Court correctly looked to decisions from the state's intermediate appellate courts for guidance in applying the well-settled law to the undisputed facts of this case. Specifically, Pennsylvania law clearly requires that a party petitioning to open a default judgment must establish a sufficient excuse for failing to answer the underlying complaint

13

and provides that inadvertence or oversight may constitute a sufficient excuse. See Balk, 285 A.2d at 132; Fox, 264 A.2d at 625. The District Court properly looked to factually analogous decisions from the Superior Court of Pennsylvania to determine that the inaction of National Grange, through its employee, went beyond mere inadvertence.

Contrary to National Grange's assertions, Autologic and Campbell do not involve conflicting interpretations of state law. Rather these cases involve the application of the same legal principle to differing sets of facts.[5] Our review of the District Court's opinion reveals that the court properly reviewed both cases and was persuaded by the reasoning in Autologic, which was factually more similar to the case at hand. The District Court demonstrated an awareness of the proper approach to state law, and we will not find error merely because the District Court did not expressly "predict" that the Supreme Court of Pennsylvania would apply state law to the facts of this case in the same way. We will not elevate form over substance and find reversible error.

B.      *Choice of Law*

We also agree with the District Court that National Grange could not sustain a legal malpractice claim based on its choice of law argument because National Grange had

---

[5] In both cases, the Superior Court recognized that Pennsylvania law provides that clerical error or mere oversight by an employee may constitute a sufficient legal justification for failing to answer a complaint. Autologic, 481 A.2d at 1364; Campbell, 335 A.2d at 373. While the court in Campbell held that an inattentive employee's oversight in forwarding papers to his superiors "is not unlike a clerical error," 335 A.2d at 373, the court in Autologic expressly distinguished situations in which an employee makes a "conscious decision which [the company] entrusted her to make" from simple inattentiveness, 481 A.2d at 1364.

14

already waived its ability to invoke Virginia law by the time it retained Helsop. Under Pennsylvania law, issues involving choice of law are not jurisdictional and may be waived if not raised. See 42 Pa.C.S.A. § 5327(a) ("A party who intends to raise an issue concerning the law of any jurisdiction . . . outside the Commonwealth *shall give notice* in his pleadings or other reasonable written notice." (emphasis added)); see also Pa.R.C.P. No. 1030(a), 42 Pa.C.S.A. (requiring parties to plead non-jurisdictional defenses in a responsive pleading). Therefore, by failing to file a responsive pleading which raised the choice of law issue, National Grange waived its ability to invoke Virginia law. See Pa.R.C.P. No. 1032(a), 42 Pa.C.S.A. ("A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply. . . .").[6]

For these reasons, had Heslop argued after the default judgment had already been entered and the time to file responsive pleadings had passed, that Virginia's law on damages was applicable, such an argument would have failed.

## IV. CONCLUSION

Because a petition to open the default judgment and a choice of law argument at the assessment of damages stage would have been rejected if made, National Grange cannot establish that it would have succeeded in the underlying Coyler v. Nat'l Grange

---

[6] National Grange now asserts that an attempt to argue that Virginia law applied after the default judgment had already been entered could have been construed as a motion to amend the pleadings under Pa.R.C.P. No. 1033, 42 Pa.C.S.A. Although a motion under Rule 1033 may be made at any time, even after trial, see Winterhalter v. West Penn Power Co., 512 A.2d 1187, 1189 (Pa. Super. Ct. 1986), National Grange did not submit any responsive pleadings in this case that might be "amended" pursuant to this rule.

15

litigation but for the omissions of Heslop and the Firm.  Therefore, under Pennsylvania's law on legal malpractice, whether these omissions constitute a failure to exercise ordinary skill and knowledge is irrelevant.  See Kituskie, 714 A.2d at 1030.  We will therefore affirm the July 8, 2004, Order and Memorandum Opinion of the District Court.